UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN RYAN,<br><br>                    Plaintiff,<br><br>      v.<br><br>MOMENTIVE GLOBAL, INC., ALEXANDER J. LURIE, DAVID A. EBERSMAN, RYAN FINLEY, SUSAN L. DECKER, ERIKA H. JAMES, SHERYL K. SANDBERG, DANA L. EVAN, BRAD D. SMITH, BENJAMIN C. SPERO, and SERENA J. WILLIAMS,<br><br>                    Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff John Ryan ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against Momentive Global, Inc. ("Momentive" or the "Company") and Momentive's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to sell the Company to Zendesk, Inc. through its wholly-owned subsidiary Milky Way Acquisition Corp. (collectively "Zendesk").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on January 7, 2022. The Proxy recommends that Momentive stockholders vote in favor of a proposed transaction (the "Proposed

1

Transaction") whereby Momentive is acquired by Zendesk. The Proposed Transaction was first disclosed on October 28, 2021, when Momentive and Zendesk announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Momentive stockholders will receive 0.225 shares of Zendesk common stock for each share of Company common stock they own ("Merger Consideration"). The deal is expected to close in the first half of 2022.

3. The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections prepared by Momentive management, as well as the financial analyses conducted by Allen & Company LLC ("Allen") and J.P. Morgan Securities LLC ("J.P. Morgan"), Momentive's financial advisors.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the Proxy with the SEC or otherwise causing an amendment to the Proxy to be disseminated to Momentive's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Momentive's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Momentive.

6. Defendant Momentive is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at One Curiosity Way, San Mateo, California 94403. Momentive common stock trades on the NASDAQ under the ticker symbol "MNTV."

7. Defendant Alexander J. Lurie has been Chief Executive Officer ("CEO") of the Company since January 2016, interim Chief Financial Officer ("CFO") since March 5, 2021, and a director since December 2009. Defendant Lurie also previously served as Chair of the Board from July 2015 to January 2016, and as interim CFO from April 1, 2019, through July 7, 2019.

8. Defendant David A. Ebersman is Chair of the Board, and has been a director of the Company since June 2015.

9. Defendant Ryan Finley founded the Company in 1999, and has been a director of the Company since its inception.

10. Defendant Susan L. Decker has been a director of the Company since 2017.

11. Defendant Erika H. James has been a director of the Company since 2018.

12. Defendant Sheryl K. Sandberg has been a director of the Company since 2015.

13. Defendant Dana L. Evan has been a director of the Company since 2012.

14. Defendant Brad D. Smith has been a director of the Company since 2017.

15. Defendant Benjamin C. Spero has been a director of the Company since 2009.

16. Defendant Serena J. Williams has been a director of the Company since 2017.

17. Nonparty Zendesk, Inc. is a Delaware corporation with its principal executive offices located at 989 Market Street, San Francisco, California 94103. Zendesk, Inc. common stock trades on the New York Stock Exchange under the ticker symbol "ZEN."

18. Nonparty Milky Way Acquisition Corp. is a Delaware Corporation and is a wholly

owned subsidiary of Zendesk, Inc.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

20. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A. Background of the Company and the Proposed Transaction**

22. Founded under the name "SurveyMonkey" in 1999, Momentive is an agile experience management company. Momentive's platform enables users to collect, analyze, and act on feedback from customers, employees, website and app users, and market research audiences. Its products enable more than 345,000 organizations to deliver better customer experiences, increase employee retention, and unlock growth and innovation. Momentive offers SaaS feedback solutions across three major product categories—Surveys, Customer Experience, and Market Research.

23. On October 28, 2021, the Company entered into the Merger Agreement with Zendesk.

24. According to the press release issued on October 28, 2021 announcing the Proposed Transaction:

**Zendesk To Acquire Momentive And Its Iconic SurveyMonkey Platform**

*Beloved customer service and customer feedback brands will create powerful new Customer Intelligence company that enables businesses to build more meaningful relationships*

*Combination expected to be growth accretive by 2023 and accelerate Zendesk's revenue plan to $3.5 billion in 2024*

SAN FRANCISCO & SAN MATEO, Calif.--(BUSINESS WIRE)-- Zendesk (NYSE: ZEN) and Momentive (NASDAQ: MNTV) have entered into a definitive agreement under which Zendesk will acquire Momentive, including its iconic SurveyMonkey platform. The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021.

Zendesk expects the combination to be growth accretive in its first full operating year and accelerate Zendesk's revenue plan to $3.5 billion in 2024, one year ahead of its previous target. The companies' respective sizable customer bases and complementary capabilities are expected to provide significant opportunity for joint product adoption and increasing Momentive's enterprise traction. Zendesk will reinvest savings from scale efficiencies into compelling growth opportunities to support the combination. Upon the close of the transaction, Momentive CEO Zander Lurie will continue to lead Momentive's strong management team.

"The SurveyMonkey brand is iconic and we've admired their business from afar since the inception of Zendesk. They truly democratized an industry—almost everyone in the world has responded to one of their surveys at some point," said Mikkel Svane, CEO & Founder, Zendesk. "We're very excited to have them join the Zendesk mission along with Momentive's market research and insights products and together create a powerful new Customer Intelligence company. We will deliver a rich, colorful picture of every customer so businesses really understand their customers and can build more authentic relationships."

"We look forward to combining with Zendesk to advance our mission and accelerate our long-term growth strategy," said Zander Lurie, CEO, Momentive. "This is a testament to the strength of our agile products and talented team. Zendesk and Momentive share a culture centered around our people, our communities and the customers we serve. The synergies between our companies are proximate and compelling. We are uniquely positioned to make Customer Intelligence a reality

while delivering significant value for our shareholders."

**Acquisition to Create Powerful New Customer Intelligence Company**

In today's digital-first economy, it is imperative to build more meaningful relationships with customers. Meaning comes from a deep understanding of the customer and their experiences. Although businesses often have an endless supply of data, they lack actionable and personalized customer intelligence. Instead, businesses are left with a picture of the customer that is one dimensional, impersonal and incomplete.

Zendesk pioneered the ability to respond to what customers say and do, making it easier to deliver superior customer service. Momentive is a leader in capturing how customers think and feel, helping companies make critical decisions quickly and confidently.

With Momentive, Zendesk will create what businesses really need—a customer intelligence company that connects what customers say and do, with how they think and feel. The combination will give businesses the ability to:

- **Listen to your customers:** Collect critical information about customer needs, experiences and expectations
- **Develop a rich picture:** Bring a customer into focus by combining transactional data with market research and insights for the context to truly understand them
- **Act on insights:** Empower teams to take action with the full breadth of data about their customers as well as feedback and market insights to improve customer interactions

**Transaction Terms**

Following a comprehensive review, the boards of directors of Zendesk and Momentive have approved the transaction.

The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021. Upon closing of the transaction, Zendesk stockholders will own approximately 78% of the combined company and Momentive stockholders will own approximately 22% of the combined company. The transaction, which is anticipated to close in the first half of 2022, is subject to approval by Zendesk stockholders and Momentive stockholders, the receipt of required regulatory approvals and other customary closing conditions. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

B. **The Materially Incomplete and Misleading Proxy**

25.     On January 7, 2022, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts*

26.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of J.P. Morgan's fairness opinion, J.P. Morgan reviewed "certain internal financial analyses and forecasts prepared by the managements of Momentive and Zendesk relating to their respective businesses." The Proxy also indicates that in connection with the rendering of Allen's fairness opinion, Allen reviewed "certain financial information relating to Momentive, including certain internal financial forecasts, estimates and other financial and operating data relating to Momentive, provided to or discussed with Allen & Company by the management of Momentive" and "certain financial information relating to Zendesk, including certain internal financial forecasts, estimates and other financial and operating data relating to Zendesk, provided to or discussed with us by the management of Zendesk and as approved and extended per the management of Momentive." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Momentive's management provided to the Board and J.P. Morgan and Allen.

27.     Notably, the Proxy fails to disclose the line item entries that form the basis of Zendesk's financial forecasts for: (a) Non-GAAP Operating Income; and (b) Unlevered Free Cash

7

Flow. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning the Financial Advisors' Financial Analyses*

28. With respect to the *Discounted Cash Flow Analyses* of Allen, the Proxy fails to disclose: (a) the "standalone unlevered, after-tax free cash flows that Momentive was forecasted to generate during the fiscal years ending December 31, 2021 through December 31, 2031"; (b) the "standalone unlevered, after-tax free cash flows that Zendesk was forecasted to generate during the fiscal years ending December 31, 2021 through December 31, 2031"; (c) the terminal values; and (d) the key data, inputs, and assumptions forming the basis of the range of discount rates applied by Allen.

29. With respect to the *Selected Public Companies Analyses* and *Selected Precedent Transactions Analysis* by Allen, the Proxy fails to disclose the specific financial multiples and metrics for each of the selected companies and precedent transactions studied by Allen.

30. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Zendesk, the Proxy fails to disclose: (a) the "unlevered free cash flows that Zendesk is expected to generate during the remainder of fiscal year 2021 through fiscal year 2031"; (b) the terminal values; and (c) the key data, inputs, and assumptions that form the basis for the range of discount rates applied by J.P. Morgan.

31. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff was not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable

harm, warranting the injunctive relief sought herein.

32. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

33. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

34. Further, the Proxy indicates that on October 28, 2021, J.P. Morgan and Allen reviewed with the Board their financial analyses of the Merger Consideration and delivered to the Board their oral opinions, which were confirmed by delivery of written opinions of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Momentive stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning the financial advisors' financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

35. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

37. Defendants have filed the Proxy with the SEC with the intention of soliciting Momentive stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

38. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Momentive, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; and (ii) the value of Momentive shares and the financial analyses performed by J.P. Morgan and Allen in support of their fairness opinions.

41. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and

recommend the Proposed Transaction; indeed, the Proxy states that the financial advisors reviewed and discussed their financial analyses with the Board during various meetings including on October 28, 2021, and further states that the Board considered the financial advisors' financial analyses and fairness opinions in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

42. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Momentive within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Momentive and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and

misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

47. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate

result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.  Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the Proxy with the SEC or otherwise disseminating an amendment to the Proxy to Momentive stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B.  Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.  In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.  Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 10, 2022                                    **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*